**IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
CIVIL DIVISION**
**(Greenbelt Division)**

| | |
|---|---|
| **LAZINA ALIE**<br>**15232 NOBLEWOOD LANE**<br>**BOWIE, MD 20716**<br><br>                    *Plaintiff,*<br><br>**v.**<br><br>**CORVEL CORPORATION**<br>**2010 MAIN STREET, SUITE 600**<br>**IRVINE, CA  92614**<br><br>                    *Defendant.* | **Case No.: 19-2193**<br><br><br>**Jury Trial Demand** |

## COMPLAINT

Plaintiff Lazina Alie, by and through counsel, hereby files this Complaint for violations of 42 U.S.C. § 1981 against Defendant CorVel Corporation ("Defendant CorVel").

## JURISDICTION AND VENUE

1.  This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981.

2.  Plaintiff has exhausted all administrative remedies prior to filing suit.

3.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## PARTIES

4.  Plaintiff Lazina Alie (hereinafter "Plaintiff") is an African American female from Trinidad and was hired by CorVel Corporation in 2008.

5.   Defendant CorVel Corporation (hereinafter "Defendant" or "CorVel") is nationwide corporation which provides risk management services, including workers compensation services to public employers, and an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

## BACKGROUND

6.   Plaintiff Alie, an African American female born in Trinidad, was hired by CorVel Corporation in 2008. She was initially employed as  a claims adjuster, and was promoted in 2010, to a supervisor position in CorVel's Largo, Maryland office in Prince George's County, Maryland. In 2013, Plaintiff Alie was again promoted to a branch manager position and was placed in charge of CorVel's account with Prince George's County, Maryland to administer workers' compensation claims, liability claims, and subrogation matters on behalf of   Prince George's County, Maryland and Prince George's County Public Schools System.  Prince George's County is a majority African American county, and unlike most of CorVel's offices, the Largo office was staffed primarily by African American employees.  As the branch manager of the Prince George's County account, Plaintiff Alie was responsible for overseeing the entire account, managing several supervisors and their staff, ensuring that all team members met account deadlines and investigated files timely, reviewing audits and ensuring that her team met all company standards, and hiring staff and determining promotions.

7.   In 2017, Plaintiff Alie reported directly to the District Manager, Teresa Dippel, a Caucasian female  in her 40s.  Her second level supervisor was the Regional Manager, Scott Hayden, a Caucasian male in his 40s.  Throughout her employment, Plaintiff Alie was a valued asset and received  higher than satisfactory performance evaluations through 2015.

8.   Beginning in 2015, Ms. Dippel began harassing Plaintiff Alie by micromanaging her and undermining her authority.   She began a practice of telling Plaintiff Alie's subordinates that Plaintiff Alie would not support them and would, instead, try to sabotage them.   In addition, Ms. Dippel denied Plaintiff Alie and her staff necessary equipment and resources, including a new copy machine, cubicles, and chairs, needed to perform their jobs.   When Plaintiff Alie informed Ms. Dippel that her team needed such resources or requested a raise or bonuses for any of her team members, Ms. Dippel would respond that the team members were not entitled to such equipment or benefits because they had not met office standards, even though Plaintiff Alie's team consistently met all objective performance standards, including all deadlines and all metrics measured in CorVel's audits of its accounts.   In September 2015, Plaintiff Alie reported Ms. Dippel's harassment of her to Ms. Dippel's then-supervisor, Dave Brown.   Nothing was done to address her complaint.

9.   In April 2016, Ms. Dippel issued Plaintiff Alie a performance review, which downgraded her performance rating and contained false and misleading statements about her performance. Plaintiff Alie requested a meeting with Human Resources and Ms. Dippel's supervisor, Mr. Hayden, and reported that Ms. Dippel was harassing her, had given her an unjust performance evaluation, which contained false and misleading criticisms of her performance, and was inappropriately denying her team bonuses and needed equipment. When she complained to Human Resources about Ms. Dippel's harassment of her, Dorinda McDonald-Poper, a Caucasian female in her 40's   the Human Resources Manager, made snide and demeaning comments to Plaintiff Alie and even laughed at Plaintiff Alie's complaint of harassment.

10. After April 2016, Ms. Dippel's harassment of Plaintiff Alie became more severe.  She gave Plaintiff Alie impossible tasks, such as instructing her to run analyses and generate reports that the CorVel systems did not create or support and requiring her to unnecessarily redo extensive tasks that had taken her days to complete when there was nothing wrong with her work product on these tasks.  In July 2016, Ms. Dippel directed Plaintiff Alie not to hire any additional employees, even though Plaintiff Alie's team was understaffed and CorVel's contract with Prince George's County mandated the hiring of additional employees to efficiently service the contract.  Ms. Dippel continued her attempts to undermine and demean Plaintiff Alie's management authority and influence when she changed Plaintiff Alie's job title from Branch Manager to Claims Manager in January 2017.  Her job title was re-instated upon the client's direction. Moreover, despite being aware of Plaintiff Alie's medical limitations and for  the first time since becoming a Branch Manager in more than four years, Ms. Dippel informed Plaintiff Alie on August 3, 2017 that, going forward, she would be required to travel as a part of her position.  In light of this unexpected job requirement, Plaintiff Alie informed Ms. Dippel that her doctor had prohibited her from traveling and that she was medically unable to sit for more than two hours at a time.  Rather than exploring possible workplace accommodations,  in accordance with federal ADA regulations Ms. Dippel responded by questioning her capabilities and insisting that Plaintiffs, Alie travel as a new part of her duties, until Plaintiff Alie's doctor provided documentation establishing her physical limitations.

11. Plaintiff Alie continued to request supplies and equipment for her team through August 2017, but Ms. Dippel continuously denied her requests. While other CorVel accounts that were primarily comprised of Caucasian staff were authorized additional equipment and supply purchases during this timeframe, Plaintiff Alie's team, which was predominantly African

4

American, did not receive new cubicles and chairs until September 2017 and never received the new copier that her team needed to efficiently and effectively service the Prince George's County accounts.

12. Ms. Dippel and Mr. Hayden gave preferential treatment in terms of compensation to young, Caucasian employees. For instance, whenever Plaintiff Alie recommended that her minority and older staff members receive raises or bonuses, Ms. Dippel and Mr. Hayden opposed her recommendations and required Plaintiff Alie to provide extensive evidence to support her recommendations.  Even with documented justification, her requests for raises and bonuses for older African American staff members were denied.  In contrast, whenever Plaintiff Alie recommended a raise or bonus for Rich Goldberg, a young Caucasian male in his 20's Claims Supervisor, Ms. Dippel and Mr. Hayden approved her recommendation without question and without requiring her to provide any supporting documentation.

13. On October 4, 2017, Ms. Dippel gave Plaintiff Alie an unsatisfactory performance evaluation which resulted in Plaintiff Alie not being eligible to receive a salary increase, even though the client advised CorVel's upper management that she was instrumental in the renewal of CorVel's contract with Prince George's County and her team had met all objective performance standards and metrics in an external CorVel audit conducted by the client, Prince George's County. In addition, the evaluation included unreasonable criticisms of her performance, such as blaming her for open desks in her department, when Ms. Dippel had expressly barred Plaintiff Alie from hiring more staff. Moreover, Ms. Dippel unjustifiably placed blame on Plaintiff Alie for the account's high turnover rate, although Ms. Dippel had repeatedly and intentionally denied Plaintiff Alie's requests for raises and bonuses that Ms. Dippel was aware would be crucial for staff retention purposes.

14. Plaintiff Alie finally received approval for new staff for her department in or around August 2017, and the new staff members were scheduled for new employee training.  Plaintiff Alie shared in confidence with  Ms. Dippel that she had concerns about the assigned trainer's abilities to properly and effectively provide the training necessary for the new employees to successfully service the account.  Instead of discreetly addressing Plaintiff Alie's concerns, Ms. Dippel again sabotaged the account's success by breaking Plaintiff Alie's professional confidence and telling the trainer that Plaintiff Alie had questioned her training skills and capabilities. As a result, the trainer refused to provide any additional training to Plaintiff Alie's staff.

15. On November 20, 2017, Plaintiff Alie again reported to the Human Resources department that Ms. Dippel was harassing her and described Ms. Dippel's discriminatory and retaliatory treatment of her. In addition, she disclosed that she believed Ms. Dippel was engaging in this behavior in an effort to force her out of her job.

16. On January 15, 2018, a CorVel employee who reported to Plaintiff Alie, Nicole Allen, sent Plaintiff Alie a text message, stating that she would not be at work that day.  Plaintiff Alie responded to Ms. Allen's message and inquired about the reason for her absence, but Plaintiff Allen never responded. Accordingly, when she returned to work on January 16, 2018, Plaintiff Alie understandably approached Ms. Allen to discuss the nature of her absence. When Plaintiff Alie approached her, Ms. Allen appeared extremely distraught and immediately began to cry uncontrollably.  As a result, Plaintiff Alie asked her to go to her (Plaintiff Alie's) office to protect Ms. Allen's privacy. Claims Supervisor Lynne Tyler, an African American female, joined Plaintiff Alie and Ms. Allen in Plaintiff Alie's office to provide assistance.  Plaintiff Alie asked Ms. Allen what was wrong several times and if she could help her, but Ms. Allen did not respond and continued to cry unabated. Eventually, Ms. Allen began to speak, while continuing to cry, and

stated repeatedly, "I cannot do this anymore;" "I cannot live like this anymore;" and "I am tired of living."  In light of Ms. Allen's behavior and repeated statements, both Plaintiff Alie and Ms. Tyler believed she was suicidal.

17. Plaintiff Alie and Ms. Tyler were unsure what to do and asked Ms. Allen if they should call Human Resources to assist her, but she asked them not to call Human Resources.  Plaintiff Alie reassured Ms. Allen that their conversation had nothing to do with work and would not impact her employment in any way.  Next, as Ms. Allen continued to cry, Plaintiff Alie suggested calling the police to assist Ms. Allen, but Ms. Allen again rejected the suggestion.  Although Plaintiff Alie was unsure what to do, she was certain she could not ignore Ms. Allen's suicidal references. Therefore, in an attempt to protect Ms. Allen's privacy, Plaintiff Alie told her that she was going to contact Farana Abdul, a Prince George's County, Maryland police officer, with whom she had previously worked, to assist them and provide guidance. Sgt. Abdul arrived at the office to assist them.  However, she indicated that Ms. Allen may feel more comfortable outside her work environment.  Thus, Plaintiff Alie suggested it might be best if they separately left the work building to protect Ms. Allen's privacy.  Following Sgt. Abdul's advice, Ms. Allen and Plaintiff Alie separately left the CorVel building and got in Sgt. Abdul's car. Sgt. Abdul and Plaintiff Alie again asked Ms. Allen what was wrong and what they could do to help her, to ensure Ms. Allen's privacy Sgt. Abdul drove away from CorVel's building  and down the street to a e parking lot . Sgt. Abdul and Plaintiff Alie again asked Ms. Allen what was wrong and what they could do to help her.  Ms. Allen continued to cry and repeatedly indicated that she did not want to live like this anymore and that she could not "take this life."  Due to Ms. Allen's continued uncontrollable crying and suicidal references, Sgt. Abdul stated that she had no choice but to take Ms. Allen to a local hospital so she could receive professional help.  Therefore, Sgt. Abdul drove them to the

hospital. Upon arriving at the hospital, Sgt. Abdul identified herself as law enforcement to the front desk and asked Ms. Allen to complete the paperwork so she could be admitted into the hospital. After numerous requests for Ms. Allen to complete the necessary intake paperwork, to no avail Sgt. Abdul displayed her police badge to Ms. Allen and directed her to complete the hospital paperwork. After Ms. Allen completed the paperwork, Plaintiff Alie hugged her and promised that she would return to pick her up after she saw a doctor.  Then, Sgt. Abdul drove Plaintiff Alie back to the CorVel building and stressed that she should not discuss this personal incident with any personnel at CorVel because the incident was not related to Ms. Allen's work. This would ensure that Ms. Allen would not be penalized at work for this non work-related, but extremely personal incident.  (information regarding the multiple calls from the hospital nurses not included )

18. Upon her return to work, Plaintiff Alie asked Ms. Tyler to drive her to the hospital so she could pick up Ms. Allen after she received her medical treatment. Subsequently, Ms. Tyler and Plaintiff Alie picked Ms. Allen up from the hospital after she finished treatment.  Neither Ms. Tyler nor Plaintiff Alie asked Ms. Allen any questions regarding her visit, but merely offered her their support and reassurance as they drove her back to the office.

19. On January 19, 2018, Plaintiff Alie called Ms. Allen to discuss a work project.  When she entered Plaintiff Alie's office, she appeared tense and upset, so Plaintiff Alie asked if she was okay.  Ms. Allen responded, "Why did you all do this to me?"  Plaintiff Alie told Ms. Allen she did not know what she was talking about but reassured her that neither she nor Ms. Tyler had taken any personnel action against her.  At this time, Ms. Allen then informed Plaintiff Alie that she had spoken to Human Resources about the incident.  In light of Ms. Allen's actions, Plaintiff Alie advised Ms. Allen that she was now obligated to provide a detailed report to Human Resources

about the incident as well.   Accordingly, Ms. Tyler and Plaintiff Alie prepared statements regarding the incident and sent these statements to Dorinda McDonald-Poper, a Caucasian female in her 40s, from Human Resources.

20. In the afternoon of January 19, 2018, Plaintiff Alie was asked to attend a meeting with her supervisor, Ms. Dippel, Ms. Tyler, and Ms. McDonald-Poper .   During this meeting, Ms. McDonald-Poper told Plaintiff Alie and Ms. Tyler that she was placing them on administrative leave, pending an investigation into the January 16, 2018 incident.  Moreover, Ms. Dippel notified Plaintiff Alie that Mr. Goldberg, the Caucasian male, would be taking over her Branch Manager duties in her absence.

21. On January 23, 2018, Plaintiff Alie asked Ms. Dippel whether she should return to work, and Ms. Dippel advised that Ms. McDonald-Poper from Human Resources would contact Plaintiff Alie and inform her of the status of the investigation.  Ms. McDonald-Poper subsequently called Plaintiff Alie and informed her that she should not return to work because the investigation was still ongoing.  Ms. McDonald-Poper disclosed that based on the investigation, at that point, she did not see any reason why Plaintiff Alie should be disciplined or terminated for the events of January 16, 2018.

22. On January 31, 2018, Plaintiff Alie received a call from Ms. McDonald-Poper and Mr. Hayden.   During this call, Ms. McDonald-Poper informed Plaintiff Alie that she was being terminated from employment effective immediately. When Plaintiff Alie asked Ms. McDonald-Poper the reason for her sudden and unexpected termination, Ms. McDonald-Poper refused to provide a reason for her termination.  After Plaintiff Alie's termination, she was replaced by a Caucasian male, Mr. Goldberg.

## COUNT I

### Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981

### (Race Discrimination)

### Disparate Treatment and Hostile Work Environment

23. Plaintiff incorporates by reference paragraphs 1 through 22 as if fully stated herein.

24. The Civil Rights Act of 1866, 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens and prohibits an employer from discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's race, ancestry, or ethnicity, and prohibits retaliation because an employee engages in protected activity.

25. In violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Defendant knowingly and intentionally subjected Plaintiff to disparate treatment based on her race and because she complained about discrimination. Specifically, Defendant denied Plaintiff Alie's requests for equipment and resources provided to other branch offices managed by Caucasian managers on multiple occasions; issued Plaintiff Alie false and discriminatory performance evaluations in 2016 and 2017; discriminated Plaintiff Alie in the terms and conditions of her employment by requiring her to travel when her job was to manage an office and supervise staff and did not impose the same requirements on Caucasian branch managers; discriminated Plaintiff Allie in compensation by paying her less than her Caucasian colleagues; and terminated Plaintiff Alie for providing assistance to a staff member who was under duress and experiencing a medical crisis. As a direct and proximate result of Defendant's actions, Plaintiff Alie suffered and continues to suffer, among

other things, loss of employment, lost earnings and benefits, humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

## COUNT II

### Retaliation

26. Plaintiff incorporates by reference paragraphs 1 through 25 as if fully stated herein.

27. The Civil Rights Act of 1866, 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens and prohibits an employer from discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's race, ancestry, or ethnicity, and prohibits retaliation because an employee engages in protected activity.

28. In violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Defendant knowingly and intentionally subjected Plaintiff Alie to retaliation because she complained about discrimination. Specifically, after Plaintiff Alie reported to CorVel's human resources department that she was being harassed between 2015 and 2017, Defendant failed to investigate her claims and Defendant denied Plaintiff Alie's requests for equipment and resources provided to other branch offices managed by Caucasian managers on multiple occasions; issued Plaintiff Alie false and discriminatory performance evaluations in 2016 and 2017; discriminated Plaintiff Alie in the terms and conditions of her employment by requiring her to travel when her job was to manage an office and supervise staff and did not impose the same requirements on Caucasian branch managers; discriminated Plaintiff Alie in compensation by paying her less than her Caucasian colleagues; and terminated Plaintiff Alie for providing assistance to a staff member who was under duress and experiencing a medical crisis. As a direct and proximate result of Defendant's actions, Plaintiff

Alie suffered and continues to suffer, among other things, loss of employment, lost earnings and benefits, humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

### Prayer for Relief

WHEREFORE, Plaintiff Alie prays as follows:

A.  That the court issue an Order declaring Defendant's actions to be a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and declaring Plaintiff Alie eligible to receive equitable and other relief;

B.  Enter judgment against Defendant;

C.  Order Plaintiff Alie's reinstatement;

D.  Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory promotions, discipline and terminations, and retaliation;

E.  Enter judgment in favor of Plaintiff  against Defendant for all equitable monetary damages available under the law, including but not limited to back pay and front pay;

F.  Order Defendant to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

G.  Order Defendant to pay compensatory and punitive damages in an amount no less than five million dollars ($5,000,000.00);

H.  Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

I.  Order Defendant to pay pre-judgment and post-judgment interest as provided by law.

Respectfully submitted,

_/s/ David A. Branch_____
David A. Branch #22862
Law Offices of David A. Branch &
Associates, PLLC
1828 L Street, NW, Suite 820
Washington, DC  20036
(202) 785-2805